IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JERRY LENEZ BANGMON | § | |
| VS. | § | CIVIL ACTION NO. 1:20-CV-435 |
| CALVIN TUCKER, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jerry Lenez Bangmon, an inmate confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Senior Warden Calvin Tucker, Assistant Warden Christopher L. Norsworthy, Assistant Warden Michael B. Crow, Lieutenant Patricia Banks, and Sergeant Jefferey Dabney.

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants filed a motion for summary judgment, and Plaintiff has filed a response. This Report and Recommendation considers the merits of the motion.

Factual Background

On March 1, 2019, Plaintiff alleges he questioned supervisory officials at the Stiles Unit about the discontinuation of his medical restroom pass. Plaintiff alleges Defendant Tucker grabbed Plaintiff's left wrist and applied pressure to twist Plaintiff's left arm behind his back while Defendants Crow, Norsworthy, and Banks pushed Plaintiff against a gate to handcuff him. Plaintiff yelled that he just had surgery on his left shoulder and that the defendants could not handcuff his

hands behind his back. Plaintiff alleges Defendants Tucker, Crow, Norsworthy, and Banks handcuffed him with his hands behind his back, and then sent him to the medical infirmary with Defendant Dabney. Plaintiff alleges he waited in the infirmary for a period of time for a pre-hearing detention physical. While he was there, the medical staff was occupied with an inmate who needed to be hospitalized and with another inmate having a medical emergency. Defendant Dabney eventually sent Plaintiff to lock-up, escorted by two correctional officers. Plaintiff alleges he remained in pre-hearing detention until March 9, 2019, and he was denied medical treatment during that time. Plaintiff subsequently had surgery to repair a recurrent left shoulder rotator cuff tear on January 30, 2020.

## Defendants' Motion for Summary Judgment

Defendants contend that they are entitled to qualified immunity because there is no evidence to support Plaintiff's claims of excessive force against Defendants Tucker, Crow, Norsworthy, and Banks or his claims that Defendant Dabney denied him medical treatment. In support of the motion, Defendants submitted Plaintiff's hospital records (Exhibit A), correspondence from the Office of the Inspector General (Exhibit B), Plaintiff's relevant grievance records (Exhibit C), and Plaintiff's relevant medical records (Exhibit D).

## Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir.

2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

## Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

3

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this instance, the court will first determine whether Plaintiff's allegations establish a violation of the Eighth Amendment constitutional right to be free from cruel and unusual punishment.

*Excessive Force*

In addressing an excessive use of force claim, analysis begins by identifying the specific constitutional right allegedly infringed upon by the challenged application of force. *Graham v. Connor*, 490 U.S. 386 (1992). The claim of a convicted prisoner is judged against the Eighth Amendment standard set out in *Hudson v. McMillian*, 503 U.S. 1 (1992). "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (*quoting Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Several factors are relevant in determining whether the force used was excessive: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

According to Plaintiff, he was handcuffed after questioning the wardens about their alleged involvement in a conspiracy to deny him a medical bathroom pass. Because Plaintiff admits he made verbal accusations of a conspiracy to the staff members who he accused of conspiring against him, it was reasonable for Defendants Tucker, Crow, Norsworthy, and Banks to perceive a need to handcuff Plaintiff to restore and maintain order. Plaintiff contends that the defendants were not supposed to handcuff him behind his back due to his prior surgery, and that the act of handcuffing him caused Plaintiff to suffer another rotator cuff tear while he was being handcuffed. The medical records supplied by Plaintiff contradict his claim that he was not allowed to be handcuffed behind his back at the time of the incident. The records show that a medical pass was issued following

5

Plaintiff's first rotator cuff surgery to prevent him being restrained behind his back, but the restriction expired on December 21, 2018, and it was not reinstated until April 15, 2019. (Doc. #1-2 at 44.)

Defendants dispute that the act of handcuffing Plaintiff caused the rotator cuff tear, and they point to medical records showing Plaintiff, on three occasions, reported severe shoulder pain after his first surgery, and prior to March 1, 2019. (Doc. #25-5 at 3-14.) Whether the force used in handcuffing Plaintiff caused the second rotator cuff tear is a factual dispute that cannot be resolved on this record, but the extent of Plaintiff's injury is only one factor to consider. The extent of the injury is relevant to an excessive force claim because it may be an indication of the amount of force used. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "Injury and force, however, are only imperfectly correlated, an it is the latter that ultimately counts." *Id*. In this case, the competent summary judgment evidence shows that a de minimis amount of force was used to handcuff Plaintiff. Not every touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9, *quoting Whitley*, 475 U.S. at 327; *see Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (spraying inmate with a fire extinguisher after the fire was out was a de minimis use of physical force and was not repugnant to the conscience of mankind where the inmate suffered no physical injury).

There is not a genuine issue of material fact regarding the circumstances of the use of force, The competent summary judgment evidence does not support a conclusion that the force used to handcuff Plaintiff behind his back was "repugnant to the conscience of mankind." Because Plaintiff

has failed to show that his constitutional rights were violated by handcuffing him, Defendants Tucker, Crow, Norsworthy, and Banks are entitled to qualified immunity

*Denial of Medical Care*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, Plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). Plaintiff must also demonstrate that the defendant was deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; Plaintiff must establish that the defendant was aware of an excessive risk to Plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d

7

693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff asserts that Defendant Dabney violated his Eighth Amendment right to be free from cruel and unusual punishment by sending Plaintiff to pre-hearing detention without first being examined by a member of the medical staff. In this case, the competent summary judgment evidence does not support a conclusion that Defendant Dabney deliberately disregarded a substantial risk to Plaintiff's health. Plaintiff states that the medical staff was busy dealing with medical emergencies when Plaintiff was in the infirmary. There is no evidence that Plaintiff required immediate medical treatment, so it was not unreasonable for Defendant Dabney to send Plaintiff directly to a cell in pre-hearing detention. Plaintiff contends that he was housed in an unsanitary cell and denied medical treatment for several days, but there is no evidence that Defendant Dabney had any involvement in Plaintiff's medical care beyond escorting him to the infirmary and then deciding to send him to a cell because he could not be seen immediately by a member of the medical staff. At most, the facts might be sufficient to state a claim of negligence for failing to ensure that Plaintiff was brought back to the infirmary for an examination when a member of the medical staff could see him, but negligent conduct does not rise to the level of a constitutional violation. *Williams v. Hampton*, 797 F.3d 276,

8

280-81 (5th Cir. 2015) (noting that deliberate indifference requires a state of mind "more blameworthy" than negligence).

Defendant Dabney's conduct does not rise to the level of egregious intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Because Plaintiff has not shown that Defendant Dabney violated his clearly-established rights under the Eighth Amendment, he is also entitled to qualified immunity.

## Recommendation

Defendants' motion for summary judgment should be granted.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 22nd day of February, 2023.

_____
Zack Hawthorn
United States Magistrate Judge